**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MICHELLE PEELER, individually | ) |
| | ) |
| and | ) |
| | ) |
| TERRY AND ANGELA HAMILTON, | ) |
| on behalf of themselves and all others | ) |
| similarly situated | ) |
| | ) |
| and | ) |
| | ) |
| MAURI AND BARBARA HAYS, | ) |
| on behalf of themselves and all others | ) Civil Action No. 1:23-cv-00023-SNLJ |
| similarly situated | ) |
| | ) |
| Plaintiffs | ) |
| v. | ) |
| | ) |
| SRG GLOBAL COATINGS, LLC | ) |
| 3M COMPANY, | ) |
| E.I DU PONT DE NEMOURS AND COMPANY, | ) |
| THE CHEMOURS COMPANY, | ) |
| THE CHEMOURS COMPANY FC, LLC | ) |
| CORTEVA, INC., | ) |
| DUPONT DE NEMOURS, INC., and | ) |
| ATOTECH USA, LLC | ) |
| | ) |
| | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

Plaintiffs Michelle Peeler, Terry and Angela Hamilton, and Mauri and Barbara Hays, for

their Second Amended Complaint against SRG Global Coatings, LLC (SRG), 3M Company, E.I.

du Pont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC,

Corteva, Inc., and DuPont de Nemours, Inc, and Atotech USA, LLC, state as follows:

## NATURE OF ACTION, JURISDICTION, AND VENUE

1.      This is an action brought by Michelle Peeler individually, and a putative class

action brought on behalf of the Representative Plaintiffs Terry and Angela Hamilton and Mauri

and Barbara Hays and other similarly situated persons harmed by the migration of hazardous carcinogenic chemicals from Defendant SRG's Portageville Missouri electroplating manufacturing properties into the soil, groundwater, air, groundwater aquifer, and drinking water for Plaintiffs' properties nearby.

2.      The hazardous chemical migration exposed Plaintiff Peeler and Representative Plaintiffs and other Putative Class Members to PFAS as well as other hazardous chemicals and metals, that caused Michelle Peeler personal injury and damaged Representative Plaintiffs' properties and caused Representative Plaintiffs increased risk for latent diseases and cancers that necessitates medical monitoring for the Representative Plaintiffs and members of the Putative Class.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2) in that this is a class action, as defined in 28 U.S.C. §1332(d)(1)(B), in which the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.  Additionally, this Court has jurisdiction because there is complete diversity of citizenship between Plaintiff Peeler, Representative Plaintiffs and Defendants.

4.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because the damages to Plaintiff Peeler and Representative Plaintiffs and the putative class members occurred within this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

5.      Michelle Peeler is a United States and Missouri citizen and resident who lived at properties in Portageville Missouri from approximately 1987 through 2022 during which time she was exposed to hazardous chemicals and metals that migrated from SRG's Portageville

electroplating manufacturing facilities causing Michelle Peeler to contract ulcerative colitis in 2014 and other subsequent adverse health effects.

6.      Terry and Angela Hamilton are United States and Missouri citizens and residents who currently own and reside at a home located at 279 County Road 204, Portageville, Pemiscot County, Missouri, who bring this case on behalf of themselves, and all other Missouri citizens similarly situated.

7.      Terry and Angela Hamilton are husband and wife who jointly own the property at 279 County Road 204 in Portageville, Pemiscot County, Missouri that is served by a drinking water well on their property that the Hamilton's have used for years for drinking water and bathing.

8.      Mauri and Barbara Hays are United States and Missouri citizens and residents who currently own and reside at a home located at 314 County Road 204, Portageville, Pemiscot County, Missouri and own a home located at 208 W. Main Street, Portageville, New Madrid County, Missouri.

9.      Mauri and Barbara Hays are husband and wife who jointly own the properties at 314 County Road 204 and 208 W. Main Street in Portageville, Missouri.  The home at 314 County Road 204 is served by a drinking water well on their property that the Hays have used for years for drinking water and bathing.   The home at 208 W. Main Street is served by Portageville municipal water that the Hays have used for years for drinking water and bathing.

10.      Plaintiffs and putative class members are United States citizens who are Missouri residents.

11.      Defendant SRG Global Coatings, LLC is a Delaware limited liability corporation, formerly known as SRG Global, Inc.  SRG's sole member is Guardian Industries Holdings, LLC, a Delaware limited liability corporation.

12.    The sole member of Guardian Industries Holdings, LLC is GI, LLC, a Delaware limited liability corporation.

13.    The sole member of GI, LLC is Guardian Industries Resources, LLC, a Delaware limited liability corporation.

14.    The sole member of Guardian Industries Resources, LLC is Guardian Industries Equity Holdings, LLC, a Delaware limited liability corporation.

15.    The sole member of Guardian Industries Equity Holdings, LLC is KGIC Holdings, LLC, a Delaware limited liability corporation.

16.    The sole member of KGIC Holdings, LLC is Koch Industries, Inc., a privately held corporation with its principal place of business in Wichita, Kansas.

17.    For purposes of determining diversity of citizenship, SRG is a citizen of Kansas and Plaintiffs are Missouri citizens.

18.    Defendant 3M Company (3M) is a Delaware corporation with its principal place of business at 3M Center, St. Paul, Minnesota.

19.    Defendant E.I. du Pont de Nemours and Company (Historical DuPont) is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington Delaware.

20.    Defendant The Chemours Company is a Delaware corporation with its principal place of business at 1007 Market Street, Wilmington Delaware.

21.    The Chemours Company was incorporated as a subsidiary of Historical DuPont as of April 30, 2015.  From that time until July 2015, The Chemours Company was a wholly-owned subsidiary of Historical DuPont.   In July 2015, Historical DuPont spun off The Chemours Company and transferred to The Chemours Company its "performance chemicals" business line, which includes its fluoroproducts business.

22.    Defendant The Chemours Company FC, LLC is a Delaware corporation with its principal place of business at 1007 Market Street, Wilmington, Delaware.

23.    The Chemours Company and The Chemours Company FC, LLC are collectively referred to in this Complaint as "Chemours".

24.    Historical DuPont merged with The Down Chemical Company in August 2017 to create DowDuPont, Inc. (DowDuPont).    Historical DuPont and The Dow Chemical Company each merged with wholly-owned subsidiaries of DowDuPont and, as a result, became subsidiaries of DowDuPont.    Since that time, DowDuPont has effected a series of separate transactions to separate its businesses into three independent, publicly traded companies for each of its agriculture, materials science, and specialty products businesses.

25.    Defendant Corteva, Inc. is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware.

26.    On June 1, 2019, DowDuPont separated its agriculture business through the spin-off of Corteva, Inc.

27.    Corteva, Inc. was initially formed in February 2018.    From that time until June 1, 2019, Corteva was a wholly-owned subsidiary of DowDuPont.

28.    On June 1, 2019, Dow DuPont distributed to DowDuPont stockholders all issued and outstanding shares of Corteva, Inc. common stock by way of a pro rata dividend.    Following that distribut8ion, Corteva, Inc. is the direct parent of Historical DuPont (i.e. E.I. du Pont de Nemours and Company) and holds certain DowDuPont assets and liabilities, including DowDuPont's agriculture and nutritional businesses.

29.    Defendant DuPont de Nemours, Inc. (f/k/a DowDuPont Inc.) is a Delaware corporation with its principal place of business at 974 Centre Road Wilmington, Delaware.    On June 1, 2019, DowDuPont, the surviving entity after the spin-off of Corteva, Inc. and of another

entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be know as DuPont (New Dupont).   New Dupont retained assets in the specialty product business lines following the above-described spin-offs, as well as the balance of the financial assets and liabilities of Historical DuPont not assumed by Corteva, Inc.

30.     Defendants E.I. Du Pont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc. and DuPont de Nemours, Inc. are collectively referred to as "Dupont" in this Complaint.

31.     Defendant Atotech USA, LLC (Atotech) is a Foreign limited liability company with its principal place of business in the State of Delaware.   Atotech is registered to do business in Missouri and does do business in Missouri and may be served through CT Corporation System in Clayton, Missouri.

## FACTUAL ALLEGATIONS

32.     SRG owns and operates electroplating manufacturing properties in Portageville, Missouri where, since approximately 1969, products have been manufactured for the automotive industry using hazardous chemicals and metals including, but not limited to PFAS, hexavalent chromium, chromium, arsenic, and nickel.

33.     3M, Dupont, and Atotech designed, manufactured, formulated, promoted, marketed and sold (directly and indirectly) PFAS products that were used in SRG's electroplating manufacturing processes.

34.     Plaintiffs do not seek damages for any PFAS contained in any firefighting (AAFF) foam products.

35.     PFAS are a family of chemical compounds containing fluorine and carbon atoms.

36.     PFAS are human-made, synthetic chemicals that do not exist naturally in the environment.

37.    PFAS, as used herein, includes, but is not limited to: PFOS, PFOA, PFNA, PFHxS, and PFHpA,

38.    PFAS chemicals migrate long distances through soil and groundwater and are transported long distances through the air.

39.    PFAS chemicals persist in the environment and do not readily break down or biodegrade.

40.    PFAS chemicals are toxic to humans at very low levels and bioaccumulate in humans.

41.    PFAS chemicals persist in the environment, particularly in water, and permeate in, and move through air, soil, and groundwater where PFAS can be ingested by humans and become toxic as they bioaccumulate in the blood stream, kidneys, liver and other organs and tissues of the human body, thereby causing and posing serious latent harm to humans including cancers, ulcerative colitis, reproductive health harm, increased cholesterol levels, and birth defects.

42.    The hazardous PFAS chemicals used at and discharged from the SRG Portageville properties have migrated into the soil, air, groundwater and drinking water underlying the SRG properties and onto and under Plaintiffs' properties in and near Portageville, Missouri.

43.    Plaintiffs did not know, could not know, and should not have known until late 2022 that the hazardous PFAS chemicals used at and discharged from the SRG Portageville properties had migrated into the soil, air, groundwater, and drinking water on and under Plaintiffs' properties in and near Portageville, Missouri because Defendants withheld that safety information from them and the public.

44.    On or about April 11, 2008, SRG purchased the Portageville electroplating manufacturing facilities and other electroplating manufacturing facilities from Siegel-Robert, Inc. for $175 million.

7

45.     SRG agreed to assume environmental liabilities associated with the Portageville manufacturing facilities in the purchase agreement with Siegel-Robert, Inc., and $6 million of the $175 million purchase price was placed in escrow to cover environmental cleanup costs because SRG discovered groundwater and soil contamination at the Portageville manufacturing facilities before the purchase during due diligence.

46.     On or about April 18, 2008, SRG entered an agreement with the State of Missouri to identify, characterize and remediate the hazardous chemical and metal contamination at its Portageville, Missouri manufacturing facilities and nearby.

47.     SRG used PFOS and/or PFOA containing chemicals manufactured and sold by Defendants to suppress hazardous hexavalent chromium fumes in its manufacturing processes at the Portageville, Missouri facilities.

48.     From 2008 to present, SRG has used and continues to use PFAS containing chemicals to suppress hazardous hexavalent chromium fumes in its manufacturing processes at the Portageville, Missouri facilities.

49.     SRG maintains a research facility in Taylor, Michigan that serves all SRG manufacturing facilities, including the Portageville facilities.

50.     In January of 2019, Michigan regulators instructed SRG to discontinue use of PFAS containing materials, including Defendant Atotech's Fumetrol products, in its manufacturing processes, but SRG continued and continues to use PFAS containing materials in the manufacturing processes at Portageville.

51.     The PFAS containing materials used by SRG in Portageville were manufactured and sold to SRG by the 3M, Dupont, and Atotech defendants.

52.     During the manufacturing processes at SRG, PFAS and hazardous metals were captured in a drainage system that contained leaks at the SRG Portageville facilities.

8

53.     PFAS and hazardous metals were then discharged from the drainage system and leaks at SRG Portageville into the Portageville groundwater and Portage Bay where such hazardous metals and PFAS migrated into Plaintiffs' drinking water source – the underground aquifer.

54.     Since at least 2008, SRG has known that hexavalent chromium, a known human carcinogen, was released from its Portageville manufacturing facilities into the groundwater aquifer in Portageville near wells from which Portageville draws its drinking water.   PFAS was released into the environment with the hexavalent chromium.

55.     SRG has also known from water sampling since at least 2020 that PFAS has been released from its Portageville manufacturing facilities into the groundwater aquifer in Portageville from which Portageville draws its drinking water, but SRG has taken no steps to remediate its PFAS releases.

56.     SRG has withheld health and safety information from Portageville, Missouri residents regarding the nature and extent of hazardous contamination that has migrated from SRG Portageville properties into Plaintiffs' properties and drinking water.

57.     The hazardous chemicals that migrated from the SRG electroplating manufacturing facilities into Plaintiffs' soil, air, groundwater and drinking water is and was carcinogenic and hazardous to human health.

58.     3M was the primary manufacturer of PFAS chemicals in the United States from the 1940s through the early 2000s.

59.     3M was the only known manufacturer of PFOS and PFHxS in the United States.

60.     3M was a major manufacturer of PFOA.

61.     3M manufactured PFOA and PFOS as raw chemical materials for use in 3M products and products made by third parties such as Atotech who supplied SRG with hexavalent chromium suppressants and other products.

62.     3M supplied PFAS to DuPont who began purchasing PFOA from 3M in 1951 for use in DuPont's Teflon products.

63.     DuPont supplied PFAS to third parties such as Atotech for use in third party products who supplied SRG with hexavalent chromium suppressants and other products.

64.     3M and DuPont were the only companies to manufacture and sell PFOA in the United States.

65.     DuPont continued to manufacture, market and sell PFOA until 2013.

66.     Since the 1950s, 3M knew from its internal studies that PFOA and PFOS were harmful to humans and the environment.

67.     By 1960, 3M knew that PFOA and PFOS were capable of leaching into groundwater used for drinking.   An internal memo from 1960 described 3M's understanding that such wastes would eventually reach the water table and pollute domestic wells.

68.     In the 1970s, 3M began monitoring the blood of its employees for PFAS because 3M was concerned about the health effects of PFAS and in 1976 confirmed that PFAS chemicals were in its workers' blood at levels up to 1000 times higher than normal.

69.     In 1975, 3M found PFOA to be widespread in human plasma according to samples taken in the United States.

70.     In 1978, 3M concluded in internal reports that PFOS and PFOA are likely to persist in the environment for extended periods and that one PFAS compound was completely resistant to biodegradation.

71.    In 1979, a 3M internal document stated that PFOA and PFOS were known to persist for a long time in the human body and create long term chronic exposure.

72.    In 1951, DuPont began using PFOA in its Teflon products that were marketed to the public beginning in 1961.

73.    By 1966, DuPont was aware that PFOA could leach into groundwater.

74.    By 1979, Dupont had data indicating that its workers who were exposed to PFOA had a significantly higher frequency of health issues compared to unexposed workers.

75.    By 1980, DuPont confirmed internally that continued exposure to PFOA was not tolerable and that PFOA accumulates in the body with exposure.

76.    By 1981, DuPont was aware that PFOA exposure caused birth defects to newborn children of women exposed to PFOA.

77.    In 2000, John R. Bowman, a DuPont in-house counsel, wrote an email to several colleagues warning that Dupont should get a clean source of water or filter PFAS out of the water system in a community with PFAS water contamination.

78.    In 2005, DuPont made a public statement to the press that there were no human health effects known to be caused by PFOA.   DuPont's own Epidemiology Review Board advised against the public statement and questioned the evidentiary basis for the public statement.

79.    In 2005, the EPA fined DuPont $16.5 million for concealing the environmental and health effects of PFAS from the public.

80.    Since at least 2006, Atotech manufactured and sold blended chemical solutions that contain PFAS including but not limited to PFOS for use in the electroplating industry

81.    Since at least 2006, Atotech has known that PFAS, including PFOS, is persistent in the environment, bio-accumulative in humans, and toxic.

82.     Atotech has sold PFAS-containing chemicals to SRG for use in its electroplating operations that include, but are not limited to Fumetrol, a hexavalent chromium mist suppressant.

83.     Plaintiffs and their properties were and are exposed to hazardous PFAS chemicals that were manufactured by 3M and Dupont and Atotech that have migrated through air and water from SRG.

84.     EPA has issued a health advisory for PFOA and PFOS in drinking water.   The PFOA health advisory limit is .004 ppt (parts per trillion) and the PFOS health advisory limit is .02 ppt.

85.     Sampling of the drinking water in the Hamilton's well at 279 CR 204 in Portageville Missouri indicates PFOA levels from 7.3 to 11.6 ppt and PFOS levels from 54.4 to 67.8 ppt, well above EPA health advisory limits.

86.     Sampling of the drinking water in the Hays' well at 314 CR 204 in Portageville Missouri indicates PFOA levels at 9.5 ppt and PFOS levels 17 ppt, well above EPA health advisory limits.

87.     Sampling of the drinking water in the Portageville City drinking water wells indicates PFOS levels ranging from 2.1 to 3.3 ppt and PFOA levels at 1.9 ppt., well above EPA health advisory limits.

88.     As a direct and proximate result of Defendants' actions and inaction, Representative Plaintiffs Hamilton and Hays have incurred damages to their properties including contamination, loss of use and enjoyment, and /or diminution in value.

89.     As a direct and proximate result of Defendants' actions and inaction, Representative Plaintiffs Hamilton and Hays have been exposed to hazardous and carcinogenic chemicals for which Representative Plaintiffs should be awarded medical monitoring damages including but not limited to PFAS blood monitoring.

90.     As a direct and proximate result of Defendants' actions and inaction, Plaintiff Peeler has incurred personal injury damages including ulcerative colitis that necessitated the removal of most of her colon and other adverse health effects that have caused her pain and suffering and past and future medical bills.

91.     Defendants acted with complete indifference and conscious disregard for the health, safety and properties of Plaintiffs and others such that punitive damages should be awarded.

## CLASS ACTION ALLEGATIONS

92.     Pursuant to Federal Rule of Civil Procedure 23, the Representative Plaintiffs bring this action on behalf of themselves, and other members of the putative class.

93.     The putative classes for this case are: "All Missouri residents whose properties were damaged by hazardous contaminants manufactured by 3M and/or Dupont and/or Atotech that migrated from the Defendant SRG properties in Portageville, Missouri;" and "All Missouri residents who were exposed to hazardous contaminants manufactured by 3M and/or Dupont and/or Atotech that migrated from the Defendant SRG properties in Portageville, Missouri."

94.     Excluded from the putative classes for this case is the Judge to whom this case is assigned, Defendant and Defendant's agents and representatives, Michelle Peeler, and all those who timely opt out of the certified classes.

95.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements for class certification set forth in Rule 23 of the Federal Rules of Civil Procedure.

96.     The members of the Classes, numbering in the thousands, are so numerous that joinder of all class members in this case is impractical.

97.     There is a well-defined commonality between Representative Plaintiffs and the putative Classes.

98.     There are common questions of law and fact applicable to the claims asserted on behalf of the Classes.   Those common questions include, but are not limited to:

(a)     Whether the Defendants acted negligently;

(b)     Whether the Defendants caused and continue to cause a nuisance;

(c)     Whether the nuisance is temporary and abatable;

(d)     Whether Representative Plaintiffs and putative class members were harmed by hazardous PFAS chemicals    manufactured by 3M and Dupont and Atotech Defendants and discharged from SRG's properties in Portageville, Missouri;

(e)     Whether Representative Plaintiffs' and putative class members' properties were damaged by hazardous PFAS chemicals from SRG's properties in Portageville, Missouri;

(f)     Whether Representative Plaintiffs and putative class members are entitled to medical monitoring damages including, but not limited to blood monitoring for PFAS;

(g)     Whether any of the defenses asserted by Defendants  are appropriate; and

(h)     Whether Defendants acted with conscious disregard for the health, safety and properties of others, rendering it liable for punitive damages.

99.     Representative Plaintiffs' claims are typical of the claims of the Classes.

100.    Questions of law and fact common to the members of the Classes overwhelmingly predominate over any questions affecting only individual class members.

101.    Damages do not require individual inquiry.

102.    A class action is superior to other available methods for fair and efficient adjudication of the controversy because the number of class members is in the thousands, the expense and burden of individual litigation of these claims is impracticable or impossible given the size of the class members' claims, and trial of these claims is manageable.

103.    The Representative Plaintiffs will fairly and adequately represent and protect the interests of the proposed Classes.  The Representative Plaintiffs' interests are not antagonistic to those of all members of the Putative Classes, and Plaintiffs understand their duties to the Classes, and are prepared to fulfill them.  Plaintiffs have retained competent and experienced counsel in the prosecution of class action litigation.

## COUNT I
## (Negligence Against SRG)

104.    Plaintiffs hereby incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

105.    Defendant SRG knew or should have known that its  activities or failures to act would cause an unreasonable risk of harm to Plaintiffs and others in the vicinity of the Portageville, Missouri SRG properties unless reasonable care was exercised to prevent such harm.

106.    Defendant SRG had and assumed a duty to exercise reasonable care to protect Plaintiffs and all members of the putative Classes and their properties.

107.    Defendant SRG failed to use ordinary care and was negligent in the following respects:

(a)    Defendant SRG failed to adequately characterize and remediate the hazardous PFAS that migrated from its Portageville facilities into the surrounding air, soil, groundwater and drinking water;

(b)    Defendant SRG failed to adequately sample for hazardous substances, including carcinogens, in the air, soil and groundwater and drinking water to which Plaintiffs and their properties were exposed;

(c)    Defendant SRG failed to adequately warn Plaintiffs that hazardous PFAS chemicals  had migrated into their air, soil, drinking water and groundwater;

15

(d)     Defendant SRG failed to adequately prevent migration of the contaminated groundwater plume from the SRG site into the aquifer under and near Portageville, Missouri, that caused dangerous pollutants to enter the drinking water of Plaintiffs; and

(e)     Defendant SRG failed to adequately treat or remove PFAS from its wastewater discharges and leaks that then migrated into Plaintiffs' properties and drinking water.

108.    As a direct and proximate result of Defendant SRG's failure to use ordinary care and negligence, Representative Plaintiffs and the Putative Classes incurred damages to their persons and properties, including, but not limited to, the need for groundwater remediation, home filters and plumbing replacements, and medical monitoring.

109.    As a direct and proximate result of Defendant SRG's failure to use ordinary care and negligence, Plaintiff Michelle Peeler has incurred personal injury damages including but not limited to pain and suffering and medical expenses.

## COUNT II
### (Private Nuisance Against SRG)

110.    Representative Plaintiffs hereby incorporate by reference the foregoing allegations.

111.    The conduct of Defendant SRG alleged herein created a substantial and unreasonable interference with Representative Plaintiffs and all members of the putative Classes use and enjoyment of their properties, and/or diminution in value of those properties, as well as a substantial and unreasonable threat to Representative Plaintiffs and all members of the putative Class's health and safety.

112.    Representative Plaintiffs and putative Class members draw and have drawn their drinking water from the groundwater aquifer beneath Portageville, Missouri that SRG has contaminated with PFAS.

16

113.    Defendant SRG operated its manufacturing facilities and its remediation activities in Portageville, Missouri such that hazardous chemicals migrated into the drinking water aquifer underlying Plaintiffs' properties.

114.    As a result of Defendant SRG's actions and inaction, hazardous chemicals have entered the air, soil, groundwater and drinking water of Representative Plaintiffs.

115.    Defendants SRG's release and failure to prevent migration of hazardous chemicals into the Representative Plaintiffs' properties has substantially impaired Plaintiffs' use and enjoyment of their properties and has caused Plaintiffs' damages including, but not limited to, the need for PFAS medical monitoring.

116.    Defendant SRG's nuisance activities are continuing and ongoing and should be abated.

## COUNT III

**(Strict Liability Design Defect Against 3M and Dupont and Atotech)**

117.    Plaintiffs incorporate by reference the foregoing allegations.

118.    Defendants 3M and Dupont and Atotech designed, manufactured, and sold PFAS products that were used at SRG in Portageville, Missouri.

119.    Defendants 3M and Dupont and Atotech PFAS products were in a defective condition and unreasonably dangerous to people and the environment when those PFAS products were put to their reasonably anticipated uses because those products have a design that allows the products to migrate into the environment, remain persistent in the environment, bioaccumulate in humans, and cause harm to the environment and humans.

120.    Defendants 3M and Dupont PFAS and Atotech products were used in a manner reasonably anticipated by 3M and Dupont and Atotech.

17

121.    Plaintiffs and their properties were harmed and damaged by the defective design of Defendants 3M and Dupont and Atotech PFAS products that contained their design defects when sold.

122.    As a direct and proximate result of Defendants 3M and Dupont and Atotech's defective and unreasonably dangerous PFAS, Representative Plaintiffs and the Putative Classes incurred damages to their persons and properties, including, but not limited to, the need for groundwater remediation, home filters and plumbing replacements, and medical monitoring.

123.    As a direct and proximate result of Defendants 3M and Dupont and Atotech's defective and unreasonably dangerous PFAS, Plaintiff Michelle Peeler has incurred personal injury damages including but not limited to pain and suffering and medical expenses.

## COUNT IV

### Negligence Against 3M and Dupont and Atotech

124.    Plaintiffs incorporate by reference the foregoing allegations.

125.    Defendants 3M and Dupont and Atotech designed, manufactured, and sold PFAS products that were foreseeably used at SRG in Portageville, Missouri.

126.    Defendants 3M and Dupont failed to exercise ordinary care and were negligent the following respects:

a.    Defendants 3M and Dupont and Atotech failed to warn Plaintiffs, SRG, and the public regarding the hazards associated with their PFAS products;

b.    Defendants 3M and Dupont and Atotech failed to design and manufacture a safer alternative product than the PFAS they designed, manufactured and sold;

c.    Defendants 3M and Dupont and Atotech failed to adequately test their PFAS products for harm to the environment and to human health.

18

127.    As a direct and proximate result of Defendants 3M and Dupont and Atotech's failure to use ordinary care and negligence, Representative Plaintiffs and the Putative Classes incurred damages to their persons and properties, including, but not limited to, the need for groundwater remediation, home filters and plumbing replacements, and medical monitoring.

128.    As a direct and proximate result of Defendants 3M and Dupont and Atotech's failure to use ordinary care and negligence, Plaintiff Michelle Peeler has incurred personal injury damages including but not limited to pain and suffering and medical expenses.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    For an Order certifying Representative Plaintiffs' claims in this action as a Class Action under the appropriate provisions of the Federal Rules of Civil Procedure 23(a), 23(b), and 23(c), designating Class Representatives; and appointing the undersigned to serve as Class counsel;

2.    For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriate under Federal Rule of Civil Procedure 23(d)(2);

3.    For an order barring Defendants from attempting, on their own or through their agents, to induce any Putative Class members to sign any document which in any way releases any of the claims of any Putative Class members;

4.    For an order directing Defendant SRG to abate the nuisance and the risks from the release of hazardous chemicals in and near Portageville, Missouri, and such other orders as may be necessary or appropriate directing Defendant SRG to take all reasonable and sufficient steps to abate the hazardous conditions now existing;

5.    For an award of compensatory damages in amounts to be determined for all injuries and damages described herein;

6.    For an award of punitive damages to the extent allowable by law, in an amount to be proven at trial;

7.    For interest on the above as allowed by law;

8.    For an award of attorneys' fees and costs on Representative Plaintiffs' claims; and

9.    For such other and further relief as is warranted and in the interest of justice.

## **DEMAND FOR JURY TRIAL**

Plaintiffs request a jury trial on all issues so triable.

Respectfully submitted,

/s/ Brian J. Madden
Brian J. Madden        MO #40637
Alison L. Bangert      MO #71297
Sam A. Moore           MO #74970
WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel. (816) 701-1100/Fax (816) 531-2372
bmadden@wcllp.com
abangert@wcllp.com
smoore@wcllp.com

/s/ Scott S. Bethune
Scott S. Bethune       MO #35685
Wes Shumate            MO #60396
DAVIS, BETHUNE & JONES, LLC
1100 Main Street, Suite 2930
P.O. Box 26250
Kansas City, MO 64196
Tel. (816) 421-1600/Fax (816) 472-5972
sbethune@dbjlaw.net
wshumate@dbjlaw.net

/s/ John F. Garvey
John F. Garvey        MO #35879
Colleen Garvey      MO #72809
STRANCH, JENNINGS & GARVEY, PLLC
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel. (314) 390-6750/Fax (615) 255-5419
jackg@bsjfirm.com
colleeng@bsjfirm.com

**ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2024, the above document was filed utilizing this Court's CM/ECF system, thereby sending notice of said filing to all counsel of record in this matter.


/s/ Brian J. Madden
**ATTORNEY FOR PLAINTIFFS**